[No. 20027. Department Two. October 14, 1926.]

H. A. PETER, *Respondent*, v. JOHN H. BOLING *et al.*, *Defendants*, E. L. STUVER *et al.*, *Appellants.*[1]

[1] USURY (11)—COMMISSION OR BONUS TO AGENT. A transaction is usurious, and the agent making the loan, for which he charged a commission which he split with the lender, acts as agent for the lender, within the usury law, Rem. Comp. Stat., § 7304, where it appears that he charged, collected and turned over to the lender a sum in addition to the eight per cent called for in the note sufficient to make the interest twelve per cent and also attorneys fees, besides splitting the commission fee.

Appeal from a judgment of the superior court for King county, Nichoson, J., entered October 10, 1925, upon findings in favor of the plaintiff, in an action upon contract, tried to the court. Reversed.

[1]Reported in 249 Pac. 776.

*Tucker, Hyland & Elvidge* (*Mary H. Alvord,* of counsel), for appellants.

*Chester & Pixley,* for respondent.

Main, J.—The complaint in this action was based upon a promissory note which had been signed by eight persons. All makers of the note were made parties defendant and all defaulted, except E. L. Stuver and wife, who resist the action on the ground of usury. The trial was to the court without a jury and resulted in findings of fact, conclusions of law and a judgment for the amount of the note and interest. From this judgment, Stuver and wife appeal.

The essential facts are these: The Nildenrich Packing Company, a corporation, was engaged in the fish canning business, and in the spring of the year 1923 was very much in need of money for the approaching season. Frank Dennis, manager of the company, approached H. B. Waite with a view to borrow the sum of five thousand dollars. Waite took the matter up with C. W. Antill who was engaged in the loan brokerage business. He had a suite of three offices in the Lumber Exchange Building in Seattle, one of which was occupied by G. G. Porter who was engaged in the contracting business. Porter paid no rent to Antill for the office which he used. When the application was made to Antill, he inquired as to the standing of the parties that would execute the note in the event that a loan was made. He then submitted the names to H. W. Parrott who was the attorney for Porter. Porter at this time was absent from the city for a few days. When he returned, Parrott having approved the transaction, he agreed to make the loan. At this time, not having sufficient money on hand, he borrowed from a bank for which loan he paid seven per cent interest per annum.

On April 30, 1923, he received a note signed by the appellants and others above mentioned due six months after date for the sum of five thousand seven hundred fifty dollars, with interest at eight per cent per annum. The money for which the note was given was paid by check in the sum of five thousand seven hundred fifty dollars which was drawn in favor of Antill and Dennis. When the check was cashed, Dennis for the packing company, got five thousand dollars and seven hundred fifty dollars went to Antill. Of this sum, Antill paid Porter one hundred fifteen dollars, which was an amount necessary to make the interest which he would receive twelve per cent, including the eight per cent provided for in the note. Thirty-five dollars was paid to Parrott, and Antill testifies that the balance was divided equally between himself and Waite.

When the note became due, it was renewed for one year and another note given for the sum of five thousand seven hundred fifty dollars. The renewal note is dated November 1, 1923. This note was signed by the same parties that signed the first one. It draws interest at eight per cent per annum and by its terms was due one year after date. When the renewal took place, Dennis for the packing company paid Porter the sum of two hundred thirty-seven dollars sixty-five cents the interest on the first note. He paid Antill one thousand two hundred thirty dollars, of which two hundred thirty dollars was given to Porter, which latter sum was necessary to make twelve per cent upon the second note as upon the first. When the second note became due it was not paid and the present action was thereafter instituted with the result above stated.

[1] The controlling question is whether Antill was the agent of Porter as well as the borrower in the transaction. As bearing upon this question, two or three excerpts from the testimony should be quoted.

As to the manner in which he did business, Antill testified:

"Q. You were loaning money for him [Porter]? A. I was loaning for Porter,—not exactly for him, wherever I could get the money; other sources of supply I knew of; if I could get a loan through him or through somebody else I could get it, that is the way I make a living. Q. That is the way you made a loan in this case because you knew Porter? A. Because I knew he had the money, otherwise I could not make the loan. Q. When you did make a loan for Porter he did not pay you a commission, the other fellow always paid you? A. I always make arrangements with the party that wants the loan to pay me a brokerage for securing it. Q. You knew Porter had money, and the other fellow wanted money, and would pay a commission, and you got Porter's money and would make the loan? A. That is it exactly."

As to the disposition which Antill made of the money that he received at the time of the first note as well as at the time of the second he testified:

"Q. Mr. Antill, at the time of the making of this first loan I believe you said you received $750 from Mr. Dennis? A. Yes, sir. Q. That was paid to you by Mr. Dennis, was it? A. Yes, sir; went over to the National Bank of Commerce and cashed the check. Q. Did you retain all of that money yourself? A. No, sir; I paid Mr. Parrott $35 of it, and I paid Mr. Porter,— Q. (By the court) Who did you pay $35? A. Mr. Parrott, the lawyer; I agreed to pay him that if we got the deal through. Q. You paid him $35 for making out the papers? A. Yes, sir. Q. You paid Mr. Porter $115, that was to make up the full twelve per cent? A. Yes, sir. Q. What did you do with the rest of it? A. I split it up between Waite and I. Q. How did you split it? A. Fifty-fifty. Q. At the time of making of the renewal note there was $1230 paid was there not? A. I don't know, I got $1,000 of it. Q. You got $1,000? A. Yes, sir. Q. What did you do with that $1,000? A. I gave Mr. Parrott $35, I gave Mr. Porter $230.

Q. What was the $35 for that you paid Mr. Parrott?
A. For fixing the papers. Q. What was the $230 you
paid Mr. Porter? A. That was to make up the balance
of the twelve per cent. Q. That was to make up twelve
per cent. for what length of time? A. That was sup-
posed to be for a year, that renewal. Q. What did you
do with the balance of the $1,000? A. Split it with
Waite fifty-fifty.''

Porter testified:

''Q. You borrowed $5,600 from the National Bank
of Commerce, Mr. Porter? A. Whatever that shows
there; it is not clear in my mind; I borrowed enough
to make up the loan. Q. You paid interest on it? A.
Yes, sir. Q. At what rate? A. Seven per cent. Q. You
were getting eight? A. I was getting eight; I told
Mr. Antill and told Mr. Waite,—Q. I am asking you.
You paid seven per cent. at the bank, and you were to
get eight? A. And I was to get $115 when I made that
loan. Q. You were to get $115? A. Yes, sir. Q.
From whom? A. I didn't care who I got it from. Q.
And you got it? A. Yes, sir, and interest for six
months. Q. That just made the twelve per cent? A.
Yes, sir, I figured on twelve per cent. Q. You figured
on twelve per cent? A. Yes, sir.''

From the evidence, some of which has been quoted,
it appears that Antill from time to time loaned money
for Porter as well as for others. His practice was to
require the borrower to pay the commission. Porter
occupied one of his offices for which he did not pay rent.
The check above referred to was made payable to Antill
and Dennis. Porter testified that he was to get twelve
per cent. The one hundred fifteen dollars paid him at
the time the loan was made was for this purpose. If,
as he testified, he was to get twelve per cent, it would
seem to follow irresistibly that Antill must have been
his agent for the purpose of collecting that sum in ad-
dition to the sum specified in the note. If Antill was

his agent for this purpose, it brings the transaction within Rem. Comp. Stat., § 7304, which provides:

"If a greater rate of interest than is hereinbefore allowed shall be contracted for or received or reserved, the contract shall not, therefore, be void; but if in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the plaintiff shall only recover the principal, less the amount of interest accruing thereon at the rate contracted for, and the defendant shall recover costs; and if interest shall have been paid, judgment shall be for the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the acts and dealings of an agent in loaning money shall bind the principal, and in all cases where there is illegal interest contracted for by the transaction of any agent the principal shall be held thereby to the same extent as though he had acted in person. And where the same person acts as agent of the borrower and lender, he shall be deemed the agent of the lender for the purposes of this chapter."

To hold that Antill was Porter's agent for the purpose of collecting the one hundred fifteen dollar and the two hundred thirty dollar items and was not an agent such as is contemplated by the statute quoted would require the drawing of a very fine line. The only reasonable inference that can be drawn from the testimony is that Antill was Porter's agent as well as the borrower's. It is true that both Porter and Antill categorically denied agency, but this testimony cannot overcome the plain inference that must be drawn from the established facts. The trial court did not make a finding on the question of agency, but did find, more as a conclusion than as a finding of fact, that no sum had been contracted for as interest in connection with the note reserved in excess of twelve per cent. In reaching the conclusion that the transaction was

usurious, we do not overturn the finding of the trial court upon the facts, but we disagree with that court as to the inference necessarily to be drawn from facts which are not in dispute.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment in accordance with the views hereinbefore expressed.

TOLMAN, C. J., MITCHELL, PARKER, and MACKINTOSH, JJ., concur.